PRICE vs. BRADFORD.

APPEAL FROM THE PARISH COURT OF NEW-ORLEANS.

A simulated sale and consignment of property to B, for the benefit of C, cannot be taken into consideration in a contest between C and an attaching creditor.

The facts are fully stated in the opinion of the court, delivered by MARTIN, J.

Yorke, Macalester & Co. are appellants from a judgement rejecting their claim to a quantity of tobacco, attached by the plaintiffs as the defendant's property.

The record shows that this tobacco, once the property of the plaintiffs was transferred to the defendant on a contract which partook of the nature of those of sale and exchange, the former being to receive therefor dry goods, notes and salt. The goods and notes had been received, but the salt was still due at the period of the attachment. It reached New-Orleans on board of the steamboat Brandywine, on Sunday, the 22d of May, 1831, and at half past midnight on the morning of the following day was attached.

The appellants and claimants relied on the *article* 3214 *of the Civil Code*, contending they had accepted the defendant's bills to a large amount, on the faith of the tobacco, having received letters advising it had been despatched to them.

The first letter is of the 2d of May, from Nashville. It announces drafts to the amount of eight thousand five hundred dollars, but makes no mention of any tobacco.

The second is of the 4th, and announces he had cotton and tobacco on the way for the Brandywine, then at the mouth of Cumberland River. It gives advice of a draft for one thousand and fifty-nine dollars and eighty-nine cents.

The third is of the 6th. It announces an intended shipment of cotton and tobacco, by the Nashville, and a draft for two thousand dollars.

EASTERN DIS.
May, 1832.

PRICE
*vs.*
BRADFORD.

The last is of the 13th. It announces the derangement of the defendant's affairs, and an apprehension of some difficulty from the plaintiff, the former owner of the tobacco by the Brandywine, which had induced him to sell it to Gordon, who had consigned it to Walker and had given a draft on the latter, which Gordon enclosed to the claimants ; that on the arrival of the Brandywine, Walker would immediately call on them and hand them the bill of lading for the tobacco, according to a condition of the contract between the defendant and Gordon. By a postscript of the 18th, dated at Memphis, the defendant announced that his apprehension of the plaintiff's going down in the boat had not been realized; he therefore enclosed a duplicate of the bill of lading for the tobacco, consigned by Gordon to Walker.

Accordingly, on the day after the arrival of the Brandywine, but after the attachment of the tobacco, the bill of lading enclosed to Walker or that forwarded from Memphis to the claimants (the duplicate of the former) was endorsed by Walker to them.

A simulated sale and consignment of property to B, for the benefit of C, cannot be taken into consideration in a contest between C and an attaching creditor.

It has appeared to us, the defendant's sale of the tobacco to Gordon, and the latter's consignment of it to Walker, cannot be taken into consideration in the decision of the present cause. They were simulated transactions, which as between the plaintiff and the claimants leave the tobacco the property of the defendants, and their respective rights absolutely unaffected.

The drafts for eight thousand five hundred dollars, announced in the first letter, were clearly accepted on the general credit of the drawer, not on the faith of any shipment of tobacco, for none was before or then mentioned.

The advice of the drafts announced in the second letter, being accompanied with the information of the departure of a quantity of tobacco for the Brandywine, it is fair to conclude the acceptance was given in the expectation of reimbursement by the proceeds of the sale, *i. e.* on the faith of the tobacco, on the way.

EASTERN DIS.
*May, 1832.*

PRICE
*vs.*
BRADFORD.

The draft for two thousand dollars, mentioned in the third letter, was indeed accompanied by advice of a shipment by the Nashville, but it was posterior to the departure of the tobacco by the Brandywine, and the claimants accepted it in the well grounded belief that the balance in their hands on the sale of the shipment by the Brandywine, after they had retained the amount of the first bill, would be in their hands a fund applicable to the payment of the second bill. This must have been the case in the ordinary routine of business, and the drawer had not manifested any intention to have the proceeds of the shipments distinctly kept apart and respectively applied to the drafts accompanying the advice of the shipments. The balance in the claimants' hands being unappropriated to any particular purpose, was in their hands a fund they might look to for the reimbursement of any money paid for the drawer, and they may well say they looked thereto, and to the proceeds of the second shipment as a fund on the faith of which they could give acceptances.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the Parish Court be annulled, avoided, and reversed, and proceeding to give such a judgement as in our opinion ought to have been given below, it is ordered, that the claimants and appellants be paid out of the proceeds of the tobacco attached, the sum of three thousand and fifty-nine dollars and eighty-nine cents, with interest and charges, and that the appellees pay costs in both courts.

*Duncan*, for appellants. *Hennen*, for appellees.